```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


TERRI K. HARE,                      :
                                    :
     Plaintiff,                     :
                                    :
vs.                                 :
                                    :    CIVIL ACTION 15-0045-M
CAROLYN W. COLVIN,                  :
Social Security Commissioner,       :
                                    :
     Defendant.                     :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 9). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 15). Oral argument was waived in this action (Doc. 14). After considering the administrative record, the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.

1

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-eight years old, had completed some college education (Tr. 46), and had previous work experience as an insurance agent and a technical support specialist (Tr. 57).  Plaintiff alleges disability due to Alprazolam[1] dependence, panic disorder, dysthymic disorder, lumbar degenerative disc disease, fibromyalgia, polyarthralgia, osteoarthritis, irritable bowel syndrome, temporomandibular joint disease, and bilateral carpal tunnel syndrome (Doc. 9 Fact Sheet).

Hare applied for disability benefits on September 16, 2011, asserting a disability onset of January 1, 2007 (Tr. 21; 119-25).  An Administrative Law Judge (ALJ) denied benefits, determining Plaintiff was capable of performing specified sedentary work (Tr. 21-34).  Hare requested review of the hearing decision (Tr. 15-16), but the Appeals Council denied it (Tr. 1-6).

---

[1]Alprazolam is the generic name for Xanax.  *See* http://www.drugs.com/alprazolam.html

2

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Hare alleges that:  (1) The ALJ did not properly consider the conclusions of her treating physician; and (2) the Appeals council did not properly review newly-submitted evidence (Doc. 9).  Defendant has responded to—and denies—these claims (Doc. 10).  The relevant evidence of record follows.

On March 28, 2007, Dr. Robert McKnight, who had been treating Plaintiff since 2002, diagnosed Hare to have Irritable Bowel Syndrome and depression, prescribing Lexapro[2] and Ultram[3] (Tr. 219; *see generally* Tr. 195-253).  Four months later, the Doctor substituted Cymbalta[4] for the Lexapro (Tr. 218).  On September 13, McKnight prescribed Xanax[5] for panic attacks (Tr. 217).  On February 8, 2008, Plaintiff complained of panic attacks and insomnia and was prescribed Wellbutrin[6] (Tr. 216). On August 8, Hare had recently fallen, injuring her left knee and causing left groin strain; Lortab[7] and Flexeril[8] were

---

[2]*Lexapro* is indicated for the treatment of major depressive disorder. *Physician's Desk Reference* 1175-76 (62nd ed. 2008).
[3]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).
[4]Cymbalta is used in the treatment of major depressive disorder. *Physician's Desk Reference* 1791-93 (62nd ed. 2008).
[5]*Xanax* is a class four narcotic used for the management of anxiety disorders.  *Physician's Desk Reference* 2294 (52nd ed. 1998).
[6]*Wellbutrin* is used for treatment of depression.  *Physician's Desk Reference* 1120-21 (52nd ed. 1998).
[7]*Lortab* is a semisynthetic narcotic analgesic used for "the

3

prescribed (Tr. 212).  In October, the Doctor found Plaintiff to have arthritis all over, with both hips and elbows being worse; he diagnosed arthralgia (Tr. 211).  On February 26, 2009, McKnight added fatigue to continuing prior diagnoses and continued medications (Tr. 210).  On November 2, Hare had right hip pain for which Lortab was prescribed (Tr. 208).  On January 4, 2010, Plaintiff complained of joint pain in the right hip, feet, ankles, and shoulders in addition to finger pain; McKnight diagnosed polyarthralgia and prescribed Lortab (Tr. 207).  Two days later, Plaintiff had a positive ANA screen (Tr. 246).  On March 2, the Doctor indicated Hare may have fibromyalgia and prescribed Lortab; six weeks later, he re-prescribed the Lortab and Xanax (Tr. 205-06).  On May 11, Savella[9] was prescribed for stress (Tr. 204).  On September 23, Hare complained of abdominal, shoulder, hip, and head pain as well as anxiety; Lortab was prescribed (Tr. 202).  On November 30, she complained of weakness and pain in her hips (Tr. 201).  On March 18, 2011, Plaintiff had hip pain and received prescriptions for Lortab and Xanax (Tr. 198).

---

relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[8]Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[9]*Savella* is a drug enhancing transmission in neurotransmitters to ease pain, reduce fatigue, and help memory.  *See* http://www.webmd.com/fibromyalgia/guide/savella-for-fibromyalgia-treatment

4

On March 24, 2011, Dr. E. Rhett Hubley with Baldwin Bone & Joint, P.C., examined Hare for intermittent right hip pain (Tr. 193).  The Doctor noted a little discomfort with straight leg raising and pain with internal rotation in both the flexed and extended position; she had full range of motion (hereinafter *ROM*).  X-rays showed there was "perhaps some slight narrowing in her right hip joint" and "a very small osteophyte forming on the superior surface of the femoral neck . . . [with] disc narrowing at L5/S1 of probably 25%" (Tr. 193).  Unable to specifically diagnose Plaintiff's ailment, the Doctor put her on a Medrol Dosepak[10] and said he would see her again in two weeks.

On May 26, 2011, Dr. McKnight prescribed Lortab for right hip arthritis (Tr. 197).  On July 18, the Doctor re-represcribed Xanax and Lortab as well as Pristiq[11] for depression (Tr. 196).  On July 21, McKnight wrote the following "To Whom It May Concern" letter:

> Ms. Hare began complaining of a multiple joint pain and low grade fever in January 2010.  At that time, she had laboratory workup which revealed a positive antinuclear antibody consistent with connect tissue disease.  Since that time, she has been dependent upon pain medication to function; however, she finds it difficult to

---

[10]A *Medrol Dosepak* (methylprednisolone) is a steroid that prevents the release of substances in the body that cause inflammation.  *See* http://www.drugs.com/mtm/medrol-dosepak.html

[11]*Pristiq* is used in treating depression and anxiety. http://www.webmd.com/drugs/2/drug-150251/pristiq-oral/details

5

> get out of bed secondary to pain and is
> unable to get out of her house most days
> and, when she is able to get out, she cannot
> tolerate it more than a couple of hours with
> activity.
>     In short, Ms. Hare is unable to move
> about and function without her pain
> medications due to her multiple joint pains
> and muscle pain secondary to her disease.

(Tr. 254). On August 3, 2011, Dr. McKnight wrote the same letter again but added the following sentence at the end: "Because of these restrictions, she is unable to work for one year" (Tr. 255).

On January 9, 2012, Lucille Williams, Psy.D., examined Hare who complained of physical problems as well as panic attacks; she stated, though, that she had not had an attack since taking Xanax (Tr. 257-58). Plaintiff did not appear anxious, seemed euthymic, and was oriented in four spheres; recent and remote memory were good. Thought processes were grossly intact with no loose associations, tangential, or circumstantial thinking; insight, understanding, and judgment were good. Hare's intelligence was estimated to be average. The Psychologist's impression was Alprazolam Dependence, Panic Disorder without Agoraphobia Controlled by Medication, and Dysthymic Disorder.

On February 1, 2012, Dr. Kevin Varden, an Internist, noted good ROM in Hare's neck; she had some right foot discomfort and slight decreased sensation of the toes distally (Tr. 260-63,

6

278).  However, she had normal flexion, extension, and dorsiflexion, and motor and sensory were intact.  Plaintiff had mild tenderness in the right hip bursa to palpation.  Gait was normal.  Hare had decreased extension with pain in her back, but good ROM throughout all planes, limited to about fifteen degrees; there was slight tenderness to palpation in the lower back paravertebral area.  Dr. Varden's impression was pain syndrome, back pain syndrome, and probable fibromyalgia with osteoarthritis by history.  The Doctor found no neurogenic or major neurological-type complications and indicated that she could perform "normal work-related activities, sitting some, standing and walking okay, carrying light objects, etc." (Tr. 261).  A right hip x-ray was normal.

On December 5, 2011, Dr. McKnight prescribed Xanax for anxiety (Tr. 271).  On February 17, 2012, in a pre-op visit, Hare was noted to be fatigued (Tr. 270).  On March 20, Ultram and Lortab were prescribed for arthralgia (Tr. 269).

On July 16, 2012, Dr. Daniel Stubler examined Hare for complaints of left arm tingling for two month; muscle spasms in her calves, abdomen, and neck; hand tremors; and hip weakness (Tr. 284-86).  Plaintiff was oriented in three spheres with recent and remote memory, attention span, concentration, language, and fund of knowledge grossly intact.  Cranial nerve examination was normal.  Strength testing was 5/5 throughout;

7

Stubler did not detect any fatiguing in the proximal muscles; there was normal bulk and tone of muscles throughout. Deep tendon reflexes were 2/4 throughout. Plantar response was downgoing and there was about a three beat of clonus on the left. Gait was normal. Dr. Stubler's impression was to rule out cervical myopathy and neuromuscular disorder but he could not entirely exclude a demyelinating disease; Hare had connective tissue disease. The Doctor prescribed Wellbutrin and ordered more tests. On August 6, Stubler tested Plaintiff for motor nerve conduction; finding the results abnormal, he concluded that Hare had mild bilateral Carpal Tunnel Syndrome but no evidence for a left upper extremity plexopathy, myopathy, C3-C8 radiculopathy or disorder of the neuromuscular junction (Tr. 287-91).

On June 25, 2012, fourteen months since her previous exam with him, Hare was seen by Dr. Hubley who noted that the steroids had not been helpful; Plaintiff complained of left shoulder pain and left arm numbness (Tr. 292). The Doctor noted full ROM in the neck, but there was impingement pain with abduction and rotation in her shoulder; she had a tremor while trying to pick something up. Hubley prescribed Lortab and recommended examination by a neurologist and rheumatologist.

This concludes the Court's summary of the relevant evidence of record.

Hare's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of her physician, Dr. McKnight (Doc. 9, pp. 8-10).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[12] *see also* 20 C.F.R. § 404.1527 (2014).

The ALJ summarized the medical history provided by Hare's treating physician, including his letter stating that she was unable to work for a year, before making the following findings:

> The undersigned finds that Dr. McKnight's statements are inconsistent with the record as a whole, including physical and neurological examinations as set forth above and EMG/NCV that showed only mild bilateral carpal tunnel syndrome and no evidence for a left upper extremity plexopathy, myopathy, C3-C8 radiculopathy or disorder of the neuromuscular junction (Exhibits 6F, 12F and 13F).  The undersigned further finds it significant that there is no evidence that the claimant has seen a rheumatologist for a diagnosis or treatment since a positive ANA test alone does not definitively indicate a diagnosis of connective tissue disease or autoimmune disorder.  Further, Dr. McKnight's statements regarding the claimant's

---

[12]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

> disabling pain appear to be overstated when compared to physical examination findings and her described activities of daily living. For these reasons, the undersigned finds Dr. McKnight's opinions to be less than fully credible, assigns little weight and otherwise finds them not to be persuasive. Furthermore, the undersigned notes that whether an individual is disabled is an administrative finding reserved to the Commissioner, and thus, such opinions are not binding or necessarily dispositive.

(Tr. 30).

The Court finds substantial evidence to support the ALJ's conclusion. Hare points to her long-standing relationship with McKnight (since 2003), but the Court notes his medical records reveal nothing more than a series of check-off examination notes with prescriptions for whatever Plaintiff requested. McKnight never provides any ROM measurements nor makes any attempt to describe what Plaintiff can do. The Doctor never notes any of Hare's daily activities while the ALJ pointed to many activities in which Plaintiff testified that she engages (Tr. 24-25). The ALJ points to the evidence provided by Drs. Varden, Stubler, and Hubley as support for his conclusions. The Court concurs in his assessment, finding this claim meritless.[13]

Plaintiff has also claimed that the ALJ did not properly review evidence submitted to it following the ALJ's decision

---

[13]The Court notes Plaintiff does not challenge the ALJ's finding that her own testimony of limitation and pain was not credible (Tr. 30, 31, 32).

(Doc. 9, pp. 10-11).  That evidence can be found at pages 293-309 in the transcript.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.  To make that determination, the Court considers whether the claimant "establish[ed] that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

The evidence from Diagnostic and Medical Clinic shows that

11

Dr. Daren A. Scroggie examined Plaintiff on February 8, 2010 and March 23, 2010 after having been referred by Dr. McKnight; he diagnosed fibromyalgia, lumbago, and insomnia and prescribed Lyrica[14] and Ambien[15] (Tr. 293-305).

On August 21, 2013, Dr. McKnight provided a treatment note as well as a physical capacities evaluation (hereinafter *PCE*) (Tr. 306-07).  On that same date, Drs. Stubler (Tr. 308) and Hubley (Tr. 309) also provided PCE's.

The Court finds that Dr. Scroggie's medical notes are cumulative to the other evidence of record.  Though Hare points to the fibromyalgia diagnosis (Doc. 9, p. 11), the ALJ listed it as one of Plaintiff's severe impairments (Tr. 23).  The Court further notes that Hare has provided no good reason for the failure of this evidence to have been submitted earlier as it easily pre-dates the ALJ's decision of May 29, 2013.

The Court finds the three PCE's submitted by McKnight, Stubler, and Hubler lacking in relevance as they all post-date the ALJ's decision and give no indication that the projected abilities/inabilities of Plaintiff relate back to the relevant time period.  The Court finds no error in the Appeals Council's decision not to remand the evidence for consideration before the

---

[14]*Lyrica* is used for the management of neuropathic pain. **Error! Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

[15]*Ambien***Error! Main Document Only.** is a class four narcotic used for the short-term treatment of insomnia.  *Physician's Desk Reference* 2799 (62nd ed. 2008).

ALJ.

Plaintiff has raised two claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 25th day of August, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE